IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:23-CR-074-Z (01) |
| JAMES DUNCAN | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO RECONSIDER ACCEPTANCE OF
GUILTY PLEA AND TO DISMISS INDICTMENT**

Duncan asks this Court to "reconsider" its acceptance of his guilty plea and dismiss the indictment against him. (ECF 44.) The Court has already determined that Duncan's guilty plea was entered knowingly, voluntarily, and with an adequate factual basis to meet each of the essential elements of the offense, and Duncan does not show a "fair and just reason" for withdrawal because the law supports his conviction for failing to register under the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a). Accordingly, this Court should deny the motion.

**I.      Factual and Procedural Background**

In December 2010, Duncan was convicted of Washington state offense of Communication with a Minor for Immoral Purposes. (ECF 24.) As recently as April 2022, he acknowledged his duty to register as a sex offender by updating his registry in Arkansas. (*Id.*) Sometime after April 2022, he left Arkansas without notifying law enforcement and relocated to the Amarillo, Texas area. (*Id.*) He did not register in Texas as required by SORNA. (*Id.*)

In June 2023, Duncan was injured in an accident and taken to an Amarillo hospital. (*Id.*) He was treated and released that day, but he returned for additional treatment over the course of the next two weeks. (*Id.*) Additional investigation by law enforcement revealed that Duncan had traveled throughout Texas during March and April 2023, and, following his arrest, he admitted to his mother in a recorded phone call that he knew he had a duty to register. (*Id.*)

On December 18, 2023, with the assistance of counsel, Duncan pled guilty to failing to register as a sex offender. (ECF 28, 30.) That same day, the magistrate judge entered her report and recommendation, finding that "the guilty plea was knowledgeable and voluntary and that the offense charged is supported by an independent basis in fact containing each of the essential elements of the offense." (ECF 30.) On January 4, 2024, this Court adopted the report, accepted the guilty plea, and adjudged Duncan guilty of the offense. (ECF 32.) Over six months later, on July 15, 2024, Duncan filed a motion asking the Court to "reconsider" its acceptance of his plea—without actually moving to withdraw his plea—and argued that the indictment against him should be dismissed because of his newfound belief that he was not required to register under SORNA. Because Duncan has not shown "good cause" to withdraw his plea and is mistaken in his assertion that he was not required to register as a sex offender, this Court should deny the motion.

## II. Arguments and Authorities

### A. Applicable Law

Although Duncan characterizes his motion as one that seeks the Court's "reconsideration" of his guilty plea, it is, in fact, a motion to withdraw his guilty plea and return anew to the place in the proceedings where he seeks dismissal of the indictment on legal grounds. While it may seem like an insignificant distinction, he attempts to sidestep the analysis required after a knowing and voluntary guilty plea has been entered. That analysis, discussed below, counsels against withdrawal.

"A defendant does not have an absolute right to withdraw his guilty plea". *United States v. Lord*, 915 F.3d 1009, 1014 (5th Cir. 2019) (citation omitted). The Court retains the discretion to permit such a withdrawal before sentencing if Duncan meets his burden to show a "fair and just reason." The Court must consider seven factors in considering whether Duncan should be allowed to withdraw his plea: (1) whether he has asserted his actual innocence; (2) whether withdrawal would prejudice the government; (3) the extent of the delay, if any, in filing the motion to withdraw; (4) whether withdrawal would substantially inconvenience the Court; (5) whether Duncan had the benefit of close assistance of counsel; (6) whether the guilty plea was knowing and voluntary; and (7) the extent to which withdrawal would waste judicial resources. *Id*. (citing *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984)).

The Court should consider the totality of the circumstances, and "[n]o single factor or combination of factors mandates a particular result." *United States v. Badger,* 925 F.2d 101, 104 (5th Cir. 1991). "[A] district court abuses its discretion in denying a

defendant's motion to withdraw a guilty plea only if the court bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. McKnight,* 570 F.3d 641, 648-49 (5th Cir. 2009).

Relative to his motion to dismiss the indictment, Duncan—despite his prior admissions—asks the Court to review his underlying Washington offense to determine whether he committed a "sex offense" under 34 U.S.C. § 20911(5). Because Duncan's offense "involves . . . "[c]riminal sexual conduct involving a minor," or is otherwise "[a]ny conduct that by its nature is a sex offense against a minor[,]" this Court should decline to dismiss the indictment. *See* 34 U.S.C. § 20911(5), (7).

## II.    Analysis of the *Carr* Factors

As discussed below, all relevant factors weigh against allowing Duncan to withdraw his guilty plea.

### i.    Assertion of Innocence

Duncan does not assert that he is actually innocent of failing to register. To the contrary, he admits that he sustained the Washington conviction in 2010, that he thereafter traveled in interstate commerce to Texas, and that he did not update his sex-offender registration within three days, as required by SORNA. (ECF 44 at 5.) Instead, he challenges—at the eleventh hour after post-plea consultation with additional counsel—whether his Washington conviction legally qualifies as a "sex offense" under SORNA. (*Id.*) But Duncan specifically pled guilty to communicating with a minor for immoral purposes and admitted as part of his plea that he "communicated with a minor for immoral purposes of a sexual nature," so he is even wrong about his legal innocence.

Enacted in 2006, SORNA instituted a nationwide sex-offender registry "to protect the public from sex offenders and offenders against children." 34 U.S.C. § 20901. In passing SORNA, "Congress cast a wide net to ensnare as many offenses against children as possible." *United States v. Gonzalez-Medina*, 757 F.3d 425, 431 (5th Cir. 2014) (internal quotation marks omitted). The purpose of SORNA was "to strengthen and increase the effectiveness of sex offender registration and notification for the protection of the public, and to eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations." National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38030 (July 2, 2008).

There are at least three possible ways the Court can find that the Washington CMIP conviction qualifies as SORNA "sex offense." SORNA defines "sex offense" to include "(ii) a criminal offense that is a specified offense against a minor." 34 U.S.C. § 20911(5)(A)(ii). "Specified offense against a minor" is then defined at Section 20911(7), and includes (as relevant here) "an offense against a minor that involves any of the following: . . . (C) Solicitation to engage in sexual conduct[;] . . . (H) Criminal sexual conduct involving a minor . . .[;] and (I) "[a]ny conduct that by its nature is a sex offense against a minor." *Id.* § 20911(7). But Duncan argues that nothing within SORNA captures his Washington CMIP conviction because the elements of a Washington CMIP conviction are broader than these three categories under SORNA.

      **A.**      **Duncan's Washington CMIP conviction qualifies as a SORNA offense under the "any conduct that by its nature is a sex offense against a minor" prong.**

Duncan's argument is built on the premise that this Court must apply the categorical approach in determining whether Washington CMIP conviction qualifies as a "sex offense." But every court to consider the issue has held that Section 20911(7)(I)—which concerns "[a]ny conduct that by its nature is a sex offense against a minor"—requires a circumstance-specific approach (rather than the categorical approach) to determine whether the underlying conviction is a valid SORNA predicate offense. *See, e.g.*, *United States v. Thayer*, 40 F.4th 797, 802 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 1793 (2023); *United States v. Hill*, 820 F.3d 1003, 1005 (8th Cir. 2016); *United States v. Dodge*, 597 F.3d 1347, 1355 (11th Cir. 2010) (en banc); *United States v. Price*, 777 F.3d 700, 708 (4th Cir. 2015). And while the Fifth Circuit has not directly addressed this question, it too has strongly suggested that it will follow suit. *See United States v. Schofield*, 802 F.3d 722, 729 (5th Cir. 2015); *see Gonzalez-Medina*, 757 F.3d at 431 (applying the noncategorical approach to the age differential in Section 16911(5)(C) and explaining that application of the noncategorical approach in that circumstance was "most consistent with SORNA's broad purpose." (internal quotation marks omitted)).

These decisions are based on SORNA's plain text. For example, the *Dodge* court reached this conclusion based on several observations, including that subsection (7)'s reference to a "specified offense against a minor" contains no reference to an element of a crime and refers to "offenses" rather than "convictions," and that the wording of (7)(I)—*i.e.*, "conduct"—"could not be any broader." 597 F.3d at 1354-55. Similarly, in

*Price*, 777 F.3d at 708, the Fourth Circuit concluded that a "circumstance-specific approach" was required based on the "text, structure, and purpose of the relevant SORNA provisions[.]"

Under the circumstance-specific approach, this Court focuses "on the facts—not the elements—relating to the prior conviction" to determine whether the conduct was "by its nature a sex offense against a minor." *Schofield*, 802 F.3d at 728 (internal quotation marks omitted). "In passing SORNA, Congress left courts with broad discretion to determine what conduct is 'by its nature' a sex offense. Indeed, Congress's stated purpose was to capture a wider range of conduct in its definition of a 'sex offense,' and specifically *all offenses*—not just convictions—of child predators." *Dodge*, 597 F.3d at 1355. "The key is conduct that contains a 'sexual component' toward a minor." *Id*.

While Duncan cites *United States v. Erlinger*, 144 S. Ct. 1840, 2024 WL 3074427 (2024), (June 21, 2024), for the proposition that this Court cannot look at his underlying offense and must, instead, apply the categorial approach, and *Fischer v. United States*, 144 S. Ct. 2176, 2024 WL 3208034 (June 28, 2024), for his argument in favor of an elements-based approach, neither case even remotely hints at an overhaul of all the circuit courts' approach to SORNA. Stretching the principles from those cases to SORNA would require this Court to overlook the multitude of cases that specifically hold the contrary.

Here, the underlying documents demonstrate that Duncan's state convictions qualify as conduct that, by its nature, is a sex offense against a minor. Specifically, he admitted to communicating with a minor for "immoral purposes of a sexual nature." In

reality, he knowingly had sexual contact with a 14-year-old runaway while he was an grown adult.

### B. Duncan's Washington CMIP conviction independently qualifies as a SORNA offense under the "criminal sexual conduct involving a minor" prong.

Duncan's argument regarding the "criminal sexual conduct involving a minor" prong is also built on the premise that the categorical approach applies. But again, at least the Fifth Circuit has stated that the circumstance-specific approach applies to this inquiry. *See United States v. Gyde*, 731 F. App'x 336, 337 (5th Cir. 2018) ("The phrase "specified offense against a minor" means, inter alia, '[c]riminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.' § 20911(7)(H). We have applied a circumstance-specific approach in considering whether the district court clearly erred in imposing the sentencing enhancement.") (citing *Gonzalez-Medina*, 757 F.3d at 427-31). Indeed, much like Section 20911(7)(i), this prong of the statute focuses on "conduct"—not "elements." Assuming the circumstance-specific approach applies, then Duncan's argument falls apart for reasons already stated.

But even if the categorical approach applies, a Washington CMIP conviction would still trigger SORNA. Under Section 20911(7)(H), "'[t]he term specified offense against a minor' means an offense against a minor that involves . . . (H) Criminal sexual conduct involving a minor[.]" The plain language of the statute—"[c]riminal sexual conduct involving a minor"—clearly applies to Duncan's conduct. And while Duncan tries to invent a distinction in this prong between physical criminal conduct and non-physical criminal conduct, (Dkt. No. 44 at 14), the Fifth Circuit has specifically applied

that prong where the underlying criminal conduct was a defendant's "social media solicitations of a minor." *Gyde*, 731 F. App'x at 337.

### C. Duncan's Washington CMIP conviction independently qualifies as a SORNA offense under the "solicitation to engage in sexual conduct" prong.

Again, Duncan's argument that this prong does not capture his Washington CMIP conviction depends on the categorical approach—and not the circumstance-specific approach—applying. But again, what case law exists confirms that the circumstance-specific approach should apply to this inquiry. *See, e.g.*, *United States v. Morciglio*, 280 F. Supp.3d 412, 415-18 (S.D.N.Y. 2017) (collecting cases, including *Gonzalez-Medina*, 757 F.3d at 427-31). Assuming the circumstance-specific approach applies, then Duncan's argument falls apart for reasons already stated.

### D. Duncan's "constitutional" argument against the circumstance-specific approach fails.

Duncan, perhaps recognizing that his argument fails under established case law, argues that this Court cannot rely on non-elemental facts in deciding his motion because, after Erlinger, any "extra facts would constitute additional elements of the current federal SORNA offense . . . must be charged in the indictment and proven to a jury beyond a reasonable doubt in this case." (Dkt. No. 44 at 32.) As previously shown, Duncan overreads *Erlinger*.

*Erlinger* concerned whether a court could determine the "different occasions" inquiry in the Armed Career Criminal Act (ACCA) at sentencing or whether this an issue that a jury had to determine, or a defendant had to admit. The Court held that a jury must

determine this issue or that the defendant must admit it. But that holding does not prevent a court from determining—especially for purposes of a motion to withdraw a guilty plea/a motion to dismiss—whether a prior conviction triggers the application of SORNA under one of SORNA's prongs.

When Duncan was indicted, he had the option to go to trial and force the government to prove to a jury the conduct underlying his Washington CMIP conviction. Instead, he chose to plead guilty and filed a factual resume, in which he conceded that his prior conviction required him to register under SORNA. Now, he claims that this Court should let him withdraw his plea and dismiss the case against him if the circumstance-specific approach is required by case law. That makes no sense. That is why Duncan does not cite any case holding that a court cannot determine whether a prior conviction triggers SORNA registration regardless of whether a categorical approach or a circumstance-specific approach applies. That is especially true in this procedural posture –*i.e.*, where a defendant has already conceded that he is subject to SORNA and that his failure to register subjected him to 18 U.S.C. § 2250.

In sum, Duncan legal innocence argument is wrong. As explained, Duncan's prior Washington CMIP conviction triggers SORNA in multiple ways, and his novel attempt to use *Erlinger* (and *Fischer*) to prevent a court from considering undisputed conduct in making this determination fails—especially given this case's procedural posture. This factor weighs against withdrawal.

### ii. Prejudice to the Government

When a defendant moves to withdraw his plea, the Court should consider the burden placed on the government in having to prepare for a trial that would have otherwise been unnecessary. *Lord*, 915 F.3d at 1015. Even in the absence of any such prejudice to the government, a defendant is not necessarily justified in withdrawing his plea. *Id*. (citations omitted).

While Duncan does not suggest that he wants a trial, he clearly wants to go back to a point in the proceedings where can reconsider his guilty plea. This late-coming change of heart prejudices the government because—as is evident by this very filing—the government is required to expend time and resources that would not have been otherwise necessary. This factor weighs against Duncan.

### iii. Delay

A significant delay in filing a motion to withdraw a plea must be supported by equally significant grounds in support of the motion. *Carr*, 740 F.2d at 344. The Fifth Circuit in *Carr* found a motion "not promptly filed" after a delay of only 22 days. *Id.* at 345. The court noted that:

> The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.

*Id*.

Relevant here, all the facts related to Duncan's plea was known at the time he entered his plea—nothing has changed. He waited over *six months* to file his motion for

reconsideration and to dismiss the indictment for no discernable reason, other than his explanation that SORNA is "confusing." (ECF 44 at 1.) While he cites a reversal in how the Texas Department of Public Safety may treat his conviction for state-registration purposes, a state duty alone is not determinative of whether there is a federal duty to register. *United States v. Navarro*, 54 F. 4th 268, 274 (5th Cir. 2022). And his reliance on recent Supreme Court precedents—neither of which even mention SORNA the state's This factor weighs against the defendant.

    iv.    **Inconvenience to the Court**

As with prejudice to the government, the Court is also to consider how allowing a defendant to withdraw his plea would affect the Court. *Lord*, 915 F.3d at 1015. This can include the potential impact on its docket and how expending additional judicial resources on a trial might impact the rights of other accused persons awaiting trial. *Carr*, 740 F.2d at 346.

As this Court is well aware, it has a busy criminal docket with several pending trials. Sentencing has been continued multiple times at Duncan's request. This factor weighs against the defendant.

    v.    **Close Assistance of Counsel**

This factor turns on whether counsel was available to the defendant throughout the proceedings, including whether counsel negotiated the defendant's plea agreement and also whether the defendant was satisfied with his defense counsel. *Lord*, 915 F.3d at 1016. Whether a defendant receives close assistance of counsel "does not turn on whether counsel found legal authority to support a viable defense," and is a "fact-

intensive inquiry." *Id*. at 1015-16 (citation omitted).

Here, Duncan had the close assistance of an experienced federal public defender, Felipe Zavala, who has been in close communication with experienced additional counsel, J. Matthew Wright. (ECF 23, 39, 41.) His lawyers originally advised him to plead guilty but have subsequently explained that SORNA is "confusing" and that Texas's reconsideration of its initial position, coupled with recent Supreme Court decisions that do not involve SORNA at all, compel withdrawal. But the facts and substantive caselaw that apply in this SORNA prosecution are unchanged in the six months that have passed since Duncan's guilty plea. Because Duncan pled guilty with the close assistance of competent counsel, and this factor weighs against him.

### vi.   Knowing and Voluntary Nature of the Plea

For a plea to be knowing and voluntary, a defendant must have full knowledge of the consequences of entering a guilty plea. *Lord*, 915 F.3d at 1016 (citation omitted). A guilty plea is invalid where the defendant does not understand the nature of the constitutional protections that are waived by pleading guilty or has such an insufficient understanding of the charges against him that the plea cannot be considered an admission of guilt. *Id*. (citation omitted). Additionally, the Court must examine whether the factual conduct admitted by the defendant during the plea hearing satisfies the elements of the offense charged as a matter of law. *Id*.

This Court found Duncan's plea to be knowing and voluntary. (ECF 30, 32.) Duncan knew that he was admitting that he had a duty register and that he failed to do so within the specified time period. The Court further found that Duncan's guilty plea to the

charged offense was supported by "an independent basis in fact containing each of the essential elements of such offense." The record demonstrates that Duncan's guilty plea was knowing and voluntary, and he provides no evidence to the contrary. This factor also weighs against withdrawal.

### vii. Waste of Judicial Resources

This Court is in the best position to know the effect that a withdrawal of a guilty plea will have on its own resources. *Carr*, 740 F2.d at 345. Obviously, if the Court were dismiss the indictment, there would be no trial. But should the Court simply permit withdrawal so that Duncan can reconsider his guilty plea with additional advice, a trial is a distinct possibility, in which case the Court would need to assemble a jury panel and clear its calendar. If he were found guilty, the probation office would have to expend additional time and resources preparing a new PSR. These are resources that the Court, but for the defendant withdrawing his plea, could otherwise dedicate to the rest of its crowded docket. Allowing Duncan to withdraw his plea, especially when he is essentially on the eve of sentencing, would waste at least "some" judicial resources. *See Lord*, 915 F.3d at 1017. Therefore, this factor weighs against the defendant.

### B. Conclusion

None of the *Carr* factors support Duncan's motion for "reconsideration" and dismissal of the indictment. *See United States v. Powell*, 354 F.3d 362, 371 (5th Cir. 2003). This Court should therefore deny it.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY


/s/ Anna Marie Bell
ANNA MARIE BELL

Assistant United States Attorney
New Mexico State Bar Number 12501
500 South Taylor Street, Suite 300
Amarillo, Texas 79101-2446
Telephone:     806-324-2356
Facsimile:     806-324-2399
E-mail:            anna.bell@usdoj.gov