In the United States District Court
for the Northern District of Texas
Amarillo Division

| United States of America, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:23-CR-74-Z-BR |
| | § | |
| James Duncan, | § | |
| Defendant. | § | |
| | § | |

**Defendant's Reply Brief**

Mr. Dunan signed a stipulation of guilt admitting that he was required to register "as a result of" his CMIP conviction. (*See* Mot., Ex. 3). When the Court accepted that admission, it did so without the benefit of the arguments and authorities raised in the motion. Mr. Duncan's attorneys regret that we did not recognize the error sooner, but the Court retains the power to correct the error and it should exercise that power.

Under the categorical approach that applies to the vast majority of SORNA's "sex offense" definition, the Court would decide whether CMIP is a "sex offense" and instruct the jury accordingly. The only question for the jury would be whether Mr. Duncan was actually convicted of that offense in the last fifteen years. Mr. Duncan admits that he was convicted in 2010. Focusing on only those undisputed facts, and depending upon how the Court interprets the SORNA's definition of "sex offense," only three conclusions are possible:

1. The elements of gross misdemeanor CMIP categorically satisfy SORNA's definition of "sex offense." Anyone convicted of gross misdemeanor CMIP has a federal obligation to register that begins at conviction or release and lasts for (at least) fifteen years;

2. The elements of gross misdemeanor CMIP *do not* categorically satisfy SORNA's definition of "sex offense," and that means that a conviction of CMIP does not give rise to a federal obligation to register; or

3. A CMIP conviction is not necessarily a "sex offense" under SORNA, but it *might* be a sex offense; that determination depends on facts or circumstances other than and in addition to the elements of the offense.

The federal complaint, indictment, and Mr. Duncan's guilty plea were all premised on interpretation [1]. If interpretation [1] were correct, Mr. Duncan would not even ask to withdraw his plea—he does not deny that he was convicted of CMIP less than fifteen years ago. But interpretation [1] would require a finding that gross misdemeanor CMIP is categorically a "sex

2

offense" as a matter of law. Interpretation [1] turns out to be wrong. Notably, the Government only briefly defends that interpretation—its only argument that CMIP is categorically a "sex offense" is limited to 34 U.S.C. § 20911(7)(H) ("Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct."). (Resp. 8-9). That argument is addressed below.

Mr. Duncan contends that interpretation [2] is correct. That understanding depends on closer scrutiny of federal and Washington state precedents. Under interpretation [2], Mr. Duncan is actually innocent of 18 U.S.C. § 2250(a) as a matter of law; there no factual basis for the plea (notwithstanding the Court's earlier finding); and Mr. Duncan's guilty plea resulted from a misunderstanding about what facts the Government would have to prove to convict him. There is no need for a trial, because there is no "sex offense" at all. If interpretation [2] is correct, the Court should dismiss the indictment.

The only way there could be a trial would be under interpretation [3]—standing alone, the CMIP conviction would not give rise to a federal obligation to register, but the Government could establish an obligation by proving some additional but disputed facts or circumstances "about the conduct underlying" the conviction. (Resp. at 10). The Government devotes most of its response to advocating interpretation [3]. Interpretation [3] is wrong. Even if it were right, there would be a "fair and just reason" to withdraw the plea. He did not intelligently admit anything about "underlying conduct."

The Government argues that Mr. Duncan's motion should be analyzed under the framework for discretionary withdrawal of an otherwise valid guilty plea. (Resp., ECF Doc. 47, at 3-5 &11-14) (discussing *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984)). The Government

addresses the most important issue—whether Mr. Duncan was required by federal law to register at the time specified in the indictment—under the "assertion of innocence" factor. (Resp. at 6–10).

The Government argues that Mr. Duncan "had the option to go to trial *and force the government to prove to a jury the conduct underlying his Washington CMIP conviction.*" (Resp., ECF Doc. 47, at 10) (emphasis added). But that assumes that the federal obligation to register turns on "the conduct underlying" a prior conviction, rather than the elements of the abstract offense. It certainly wasn't clear to Mr. Duncan that he was admitting *anything* about that "conduct" other than what was necessarily established by his original guilty plea—that he communicated with a minor for immoral purposes of a sexual nature. No one advised him about that at the time.

This is not a case about buyer's remorse—what the Government calls a "bad choice in pleading guilty." (Resp. at 11) (quoting *Carr*, 740 F.2d at 345). This is a different kind of case—the parties disagree about *what the relevant federal statutes mean*, and thus about *what facts the Government would need to prove to convict*. That dispute calls into question the propriety of accepting the guilty plea in the first place. That is why Mr. Duncan urges the Court to decide the legal questions first, and then consider the remedy.

## II.  Mr. Duncan was not required to register under SORNA.

In the motion, Mr. Duncan argued that the vast majority of SORNA's definition is categorical and elements-dependent. He acknowledged contrary authority about the residual clause—34 U.S.C. § 20911(7)(I)—but explained why that, too, should be a categorical inquiry. The Government's response appears to deny that the "sex offense" or "specified offense against a minor" definitions are primarily categorical.

4

The definitions of "sex offense" and "specified offense against a minor" have a dual purpose. They define an *individual*'s federal obligation to register; but they also define various state, local, territorial, and tribal *governments*' obligation to maintain their own registries to maintain federal funding. Creating and maintaining a registry based on *underlying conduct* would be impossible. Recognizing this, the Department of Justice itself assured states that these definitions focused on *convictions*, and not on *conduct*:

> Offense of conviction versus underlying conduct: Some commenters raised questions or provided recommendations as to whether the application of SORNA's requirements depends on the elements of the offense for which the sex offender is convicted or the underlying offense conduct. The answer to this question may affect whether registration is required by SORNA at all, and may affect the "tier" classification of offenders under the SORNA standards. The general answer is that jurisdictions are not required by SORNA to look beyond the elements of the offense of conviction in determining registration requirements, except with respect to victim age. The discussion of the tier classifications has been edited in the final guidelines to make this point more clearly.

U.S. Dep't of Justice, *National Guidelines for Sex Offender Registration and Notification*, 78 Fed. Reg. 38030, 38031 (2008).

When defining "sex offense," Congress very plainly utilized categorical, elements-based definitions in 34 U.S.C. § 20911(5)(A)(i), (iii), (iv), and (v). And the definition of "specified offense against a minor" was lifted nearly verbatim from the predecessor statute's definition of "criminal offense against a victim who is a minor." *See* Pub. L. 302-322, tit. 17, § 170101(a)(3), 108 Stat. 2039 (1994). That, too, was a categorical and elements-based definition. It originally referred to any offense that "consists of" certain criteria, and was later amended to reach any offense "in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses." *See* Pub. L. 105-119, § 115(a)(1)(C), 111 Stat. 2461 (1997).

In SORNA, as in the overwhelming majority of federal statutes focused on prior-convictions, the chief focus is on the *abstract offense* of conviction, and not the particular way it was committed. Some criteria may be fact- or circumstance-specific, such as victim age, but Defense Counsel is aware of no other federal prior-conviction statute that looks entirely to underlying conduct rather than the elements of the offense.

### A. CMIP is not "solicitation to engage in sexual conduct."

The federal complaint asserted that Washington CMIP "translates to" the Texas offense of online solicitation, and then determined that the "translated" offense prohibited "Solicitation to engage in sexual conduct," which is one category of "sex offense" under 34 U.S.C. § 20911(5)(A)(ii) and § 20911(7)(C). Mr. Duncan argued that this "translation" was wrong and irrelevant; that CMIP is broader both in terms of its *conduct* element (communicating with a minor) and its *mental state* element (for immoral purposes of a sexual nature) than "solicitation to engage in sexual conduct").

The only argument the Government raises on the "Solicitation" prong is that the definition should be evaluated under a purely fact-specific approach. (Resp. at 9) (citing *United States v. Morciglio*, 280 F. Supp. 3d 412 (S.D.N.Y. 2017)). The Government does not argue that CMIP is categorically equivalent to or narrower than "solicitation to engage in sexual conduct." And the Government does not argue that Mr. Duncan *in fact* committed solicitation, much less that he was "convicted of" solicitation.

*Morciglio* did *not* adopt a fact-specific approach to the "solicitation" prong in (7)(C). The court recognized that § 20911(5)(A) required a primarily categorical analysis: "There is little dispute that SORNA's definition of 'sex offense,' which invokes the word 'element,' invites a

6

categorical approach." 280 F. Supp. 3d at 416–17. The defendant there had been convicted of multiple sexual crimes, including "Criminal solicitation of statutory sexual assault." 280 F. Supp. 3d at 413 (citing 18 Pa. Stat. §§ 902(a), 3122.1(a)(1)).

The discussion of the fact-specific approach was limited to "whether the Defendant may take cover under the 34 U.S.C. § 20911(5)(C) Exception." 280 F. Supp. 3d at 415. Even if the defendant was convicted of an offense enumerated in § 20911(5)(A)–including a "specified offense against a minor" under § 20911(5)(A)(ii)–he would not be required to register if he satisfies the exception in § 16911(5)(C). Following the Fifth Circuit's reasoning in *United States v. Gonzalez-Medina*, 757 F.3d 425 (5th Cir. 2014), the New York district court adopted a fact-specific approach, but *only* for "the age-differential determination in the § 16911(5)(C) exception." 757 F.3d at 429; *see Morciglio*, 280 F. Supp. 3d at 417.

Here, the Court need not reach the "exception" § 16911(5)(C) because the Government cannot point to any conviction that otherwise satisfies § 16911(5)(A).

**B. CMIP is not "Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct."**

Turning to § 20911(7)(H), the Government asserts that a fact-specific approach applies, and alternatively argues that CMIP would qualify even under the categorical approach. All the arguments are premised on the Fifth Circuit's unpublished decision in *United States v. Gyde*, 731 F. App'x 336 (5th Cir. 2018). (Resp. at 8–9). These arguments misread the statute and *Gyde*.

The Sentencing Guideline for failure to register provides for an eight-offense-level enhancement "if, while on failure-to-register status, the defendant committed a sex offense against a minor." *Gyde*, 731 F. App'x at 336 (discussing U.S.S.G. § 2A3.5(b)(1)(C)). The Guideline incorporates SORNA's definition of "sex offense," 34 U.S.C. § 20911(5), without adopting

7

SORNA's requirement of a *conviction*. Like many other Guideline enhancements, § 2A3.5(b)(1) applies if the defendant *committed* a qualifying offense, regardless of whether he was ever *convicted* of that offense. *Id.* at 337 ("[C]onviction of a sex offense is not required.").

In *Gyde*, the Fifth Circuit affirmed the district court's finding, by a preponderance of the evidence, that the defendant in fact committed two Louisiana offenses. *Id.* (citing La. Rev. Stat. § 14:81.3(A)(1) & La. Rev. Stat. § 14:81(A)(2)). Though the defendant denied that he committed those offenses, he did not argue that they fell outside SORNA's definition. In other words, *Gyde* supports Mr. Duncan's argument that the elements of the relevant offense *must* meet at least one of SORNA's definitions for "sex offense." It is true that *Gyde* looked to the defendant's *conduct*, rather than *conviction*. But that was because the Guideline enhancement does not require conviction.

The statutory text itself distinguishes between "sexual conduct involving a minor" and internet communications designed to facilitate such conduct. *See* 34 U.S.C. § 20911(7)(H). *Gyde* did not hold that the defendant's online activities were "sexual conduct involving a minor"—it held that those illegal online activities were "use of the Internet" to facilitate such conduct. If the Government's interpretation of "Criminal Sexual conduct" were correct, there would be no need for the second part of the definition.

### C. CMIP does not "otherwise involve conduct that by its nature is a sexual offense against a minor."

Turning to SORNA's residual clause, 34 U.S.C. § 20911(7)(I), the Motion explained why the Court should apply the categorical, elements-based approach but conceded that most appellate courts had rejected the argument.

8

The Government claims that Mr. Duncan defines "conduct" too narrowly, but the statutory text itself distinguishes between "sexual conduct" and internet activity designed to facilitate such "conduct." *See* 34 U.S.C. § 20911(7)(H). Both of those terms are textually distinct from "Solicitation to engage in sexual conduct" and "Solicitation to practice prostitution." If "criminal sexual conduct" means anything illegal and remotely related to sex, then there would be no need for anything other than the first part of § 20911(7)(H). The text *itself* distinguishes among these concepts; the Court must use precedents and the tools of statutory construction to identify the distinct meanings.

Mr. Ducan's motion proposed a rubric that takes into account the entire statutory text and structure. Subsection (7)(I) reaches all and only offenses whose elements *necessarily implicate* conduct—*i.e.*, behavior—that is inherently a sex offense against a minor. Washington's CMIP is unique insofar as its behavior element is *not* inherently sexual nor inherently *against* a minor: "communication with a minor." It is only the defendant's *purpose* that makes the act a crime. The distinction between "conduct" and mental state is well known to criminal law and there is a categorical approach specifically and exclusively focused on conduct elements.

### III. Because the plea was invalid, the discretionary factors favor Mr. Duncan.

The motion and this reply explain why CMIP is not a "sex offense" under SORNA. That makes Mr. Duncan factually innocent. It also means that the plea was invalid for lack of a factual basis and for being unintelligent.

If SORNA's "sex offense" definition is a legal question for the Court, then the Court should grant the motion regardless of any discretionary factors. None of those factors outweigh a defendant's right not to be convicted for non-criminal conduct.

If the Government is correct and "sex offense" depends on non-elemental facts, the Court should still grant the motion but should not necessarily dismiss the indictment. At the time he pleaded guilty, Mr. Duncan believed that his CMIP conviction automatically gave rise to a federal obligation to register, regardless of underlying facts. The Government seems to contend that Mr. Duncan's guilty plea, premised on the incorrect interpretation in [1], should deprive him of the ability to contest the element under interpretation [3]. Not so. Mr. Duncan never admitted, intended to admit, or intelligently admitted any *additional* facts (whatever they might be) about his prior offense beyond its existence. He certainly did not understand that existence of a federal obligation depended on those other facts (whatever they might be). *See Bousley v. United States*, 523 U.S. 614, 616–18 (1998) (A plea of guilty admitting that the defendant "knowingly and intentionally used … firearms during and in relation to a drug trafficking crime" would be unintelligent if the defendant did not know that "use" of a firearm meant "active employment" of a firearm).

A final note about the fact-specific approach: the Government asserts that "in reality" Mr. Duncan "knowingly" engaged in sexual contact with an underage victim. (Resp. 7–8). Mr. Duncan was *accused* of a contact offense at the time, but Washington prosecutors never secured a conviction for any contact crime. What Mr. Duncan was *convicted of* was communicating with someone who was in fact younger than 18 for immoral purposes of a sexual nature. Anything more would have to be proven here or admitted as part of Mr. Duncan's federal plea. There is no reason to believe that federal prosecutors in 2024 will be in a stronger position than Washington prosecutors in 2010.

The delay in recognizing the error hurt Mr. Duncan much more than it hurt the Government. If, as it now appears, Mr. Duncan was never convicted of a "sex offense," then the prosecution should have been dismissed long ago. But that assumes perfect knowledge among all the relevant players. Experience confirms that these definitions are difficult, and experienced lawyers and law enforcement agents often fail to recognize errors—sometimes until the direct appeal.

The remaining *Carr* factors all assume a knowing, intelligent, and constitutionally valid guilty plea. If Mr. Duncan was not required to register by federal law, then none of the remaining discretionary factors would justify convicting and sentencing him under 18 U.S.C. § 2250(a). If everyone convicted of CMIP is legally required to register by federal law, then the plea should remain in place.

The only close question is what the Court should do if § 2250(a) requires proof of additional facts about "underlying conduct," and Mr. Duncan pleaded guilty without realizing that. Mr. Duncan contends that the plea itself would *still* be invalid under those circumstances. He certainly did not intend to admit additional facts about his "underlying conduct"—he does not even know what those facts might be.

With few exceptions, SORNA cares only about *convictions*. The Government asserted early on that his conviction was essentially the same as Texas online solicitation, which is a SORNA sex offense. Mr. Duncan and his attorneys did not recognize the problem with that assertion until after he had entered his guilty plea, which the Court accepted without the benefit of the authorities raised in the motion. He asks that the Court review the motion, response, and this reply and decide which of the three interpretations of SORNA is correct.

Respectfully submitted,

Jason D. Hawkins
Federal Public Defender
Northern District of Texas

/s/ Felipe Zavala
Assistant Federal Public Defender

/s/ J. Matthew Wright
Assistant Federal Public Defender

500 South Taylor Street, Suite 110
Amarillo, Texas 79101
806-324-2370